UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| SAMANTHA SUMNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-21-399-P |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| Acting Commissioner of the | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## **ORDER**

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying her applications for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 423, 1382. Defendant has answered the Complaint and filed the administrative record (hereinafter AR___), and the parties have briefed the issues. For the following reasons, Defendant's decision is affirmed.

I.  Administrative History and Final Agency Decision

Plaintiff filed her application for DIB on September 20, 2019, and her application for SSI on September 30, 2019. AR 13. Plaintiff alleged she became disabled on August 27, 2019. *Id.* The Social Security Administration denied Plaintiff's applications on February 19, 2020, and on reconsideration on May 7, 2020. *Id.*

Plaintiff appeared with counsel and testified during an administrative hearing before an Administrative Law Judge ("ALJ") on November 23, 2020. AR 13, 27-55. A vocational expert ("VE") also testified. AR 49-53. On December 7, 2020, the ALJ issued a decision finding Plaintiff was not disabled within the meaning of the Social Security Act from August 27, 2019 through the date of the decision. AR 10-22.

Following the agency's well-established sequential evaluation procedure, the ALJ found Plaintiff had not engaged in substantial gainful activity since August 27, 2019, the alleged onset date. AR 15. At the second step, the ALJ found Plaintiff had the following severe impairments: migraines, trigeminal neuralgia, and a neurological impairment. *Id.* At the third step, the ALJ found that her impairments were not *per se* disabling as Plaintiff did not have an impairment or combination of impairments meeting or medically equaling the requirements of a listed impairment. AR 17.

At step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform less than a full range of medium work. *Id.* Specifically, Plaintiff "should have no exposure to unprotected heights, moving machinery parts, and no exposure to extreme cold. She is limited to simple repetitive routine tasks and she cannot work at a production rate pace." *Id.*

At step five, the ALJ, relying on the VE's testimony, determined Plaintiff could perform her past relevant work as a casino ambassador hostess, slot attendant, and cashier/checker. AR 20. Continuing to rely on the VE's testimony, the ALJ further determined Plaintiff could perform the following jobs existing in significant numbers in the national economy: hand packager, "a laborer/stores," and a dining room attendant. AR 22. As a result, the ALJ concluded Plaintiff had not been under a disability, as defined by the Social Security Act, from August 27, 2019 through the date of last insured. *Id.*

The Appeals Council denied Plaintiff's request for review, and therefore the ALJ's decision is the final decision of the Commissioner. 20 C.F.R. § 404.981; *Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009).

## II.  Issue Raised

On appeal, Plaintiff contends the ALJ erred by failing to include limitations in the RFC related to interruptions in productive activity. Doc. No. 18 ("Op. Br.") at 7-13.

III.  <u>General Legal Standards Guiding Judicial Review</u>

Judicial review of Defendant's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). Substantial evidence "means—and means only— 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, __ U.S. __, 139 S.Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

The "determination of whether the ALJ's ruling is supported by substantial evidence must be based upon the record taken as a whole. Consequently, [a court must] remain mindful that evidence is not substantial if it is overwhelmed by other evidence in the record." *Wall*, 561 F.3d at 1052 (citations, quotations, and brackets omitted). The court "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.* (quotations omitted). While a court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, a court does not reweigh the evidence or substitute its own judgment for that of the defendant. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

IV. <u>Analysis</u>

Plaintiff argues the ALJ erred by failing to include certain limitations in the RFC. Specifically, she contends the RFC should have included allowances for unscheduled breaks, off task behavior, and/or periodic absences arising from migraine headaches, dizzy spells, or flares of trigeminal neuralgia pain. Plaintiff argues that the ALJ's error was the result of his improperly considering her subjective reports regarding her symptoms.

This Court's review of the ALJ's consideration of Plaintiff's subjective reports is guided by two principles. First, such "determinations are peculiarly the province of the finder of fact, and [the court] will not upset such determinations when supported by substantial evidence." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995). Second, "findings as to [subjective reports] should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Id.* (additional alteration omitted).

The ALJ concluded that Plaintiff's reported limitations were not entirely consistent with the medical and other evidence of record. With regard to Plaintiff's migraines, the ALJ stated the following:

> The claimant testified regarding migraines. She testified that although one of the newer medications was helping, she can no longer [] afford this medication. She testified that at times, she can be completely miserable from her migraines and spend several hours in a dark room.
>
> . . . .

Neurology records from June 2020 indicate that the claimant reported daily migraines with a dull ache on the left side. The claimant reported one bad migraine per month. Although migraine pain can reach 10/10, the claimant reported that most days, is it about 3-4/10, which the claimant tolerates. She has tried a number of medications and has received medication cocktails from the emergency room when she goes to the emergency room. Claimant reported she only received emergency room treatment every one or two years; the claimant reported migraines began nine days after the birth of her son and although photosensitive with dizziness and nausea, claimant has never had a vomiting episode. Claimant alleges stress and lack of sleep provoke migraines and that they generally occur from 10 AM to 3 PM. When examined, the claimant presented with normal judgment, memory, mood and affect, intact recent and remote memory, and intact attention and concentration span.

AR 18-19.

This summation of Plaintiff's reports is fully supported by the record. On June 4, 2020, Plaintiff reported to Dr. Salman Zubair, a neurologist, that she experiences one bad migraine per month that causes pain that she would rate as 10/10 on a pain level scale. AR 453. She also reported that most days, she experiences migraine pain that she would rate as a 3-4/10 and that she tolerates that level of pain. *Id.* Additionally, in her Opening Brief, Plaintiff notes that the ALJ accurately acknowledged these reports. Op. Br. at 10 ("The ALJ correctly observed in his review of neurology records from 2020 that [Plaintiff] reported daily headaches (at a pain level of three to four out of ten) with one 'bad migraine' per month (at a ten out of ten level)."). The ALJ mentioned Plaintiff's testimony regarding a helpful medication that she cannot afford, and Plaintiff refers to the same in her Opening

Brief. AR 18; Op. Br. at 10. However, during Plaintiff's June 2020 report regarding the frequency and severity of her migraines, she also indicated that she was not taking any medications for migraines at that time. AR 456.

As Defendant argues in her Response, the ALJ's RFC allowed for Plaintiff's reported experiences. The VE testified that being off task up to 10% of the week and missing one day per month of work was tolerated in the normal course of business AR 51-53. Thus, a limitation in the RFC for these was not warranted and/or the lack thereof could not amount to more than harmless error. *See Bainbridge v. Colvin*, 618 F. App'x 384, 391 (10th Cir. 2015) ("We need not resolve whether the ALJ should have included the additional manipulative limitations because, even if she should have, the error was harmless. . . . The VE testified that the additional manipulative limitations would not preclude work as a surveillance system monitor . . . ."); *Montez v. Saul*, No. 2:19-cv-00195-DBP, 2020 WL 1188103, at *4 (D. Utah March 12, 2020) (finding harmless error because "the record establishes that Plaintiff could perform other work in the national economy even if he had been limited to only two hours of standing and walking in an eight-hour day") *Washington v. Saul*, No. 18-1286-EFM, 2019 WL 4080925, at *4 (D. Kan. Aug. 29, 2019) ("Since the vocational expert addressed the impact of the carrying limitations, and the number of available jobs in the national economy that Washington can perform remains significant, the Court concludes that the ALJ's omission [of the carrying limitation] was a harmless

error."). According to Plaintiff's own subjective reports, she tolerates her daily migraines with the exception of approximately one day per month in which she experiences a severe migraine. AR 453. These reports are not inconsistent with the RFC and/or the VE's testimony regarding Plaintiff's abilities to perform the identified jobs.

Plaintiff also asserts similar arguments regarding her reported symptoms arising from trigeminal neuralgia. In discussing the same, the ALJ stated:

> The claimant alleges she is disabled due to dizzy spells, falling, tunnel vision, body convulsions, and trigimala [sic] neuralgia. Regarding the claimant's reported dizzy spells and convulsions, the claimant testified that her doctor does not seem to be too concerned about this. The claimant testified she has not been diagnosed with epileptic seizures and she does not take any medications for dizziness and convulsions. She testified regarding trigeminal neuralgia. The claimant testified that marijuana is the only thing that stops the pain.

AR 18.

Plaintiff testified that barometric pressure and cold tend to trigger her trigeminal neuralgia, though sometimes it comes about on its own. AR 42-43.

Q. So how often do you have this pain?

A. Probably three or four times a week.

Q. And how long does it last?

A. Oh, anywhere from three or four minutes.

Q. Okay. Then it just goes away by itself?

A. If I have my medical marijuana it will go away but if I don't use my medical marijuana, the pain lasts all day long.

Q. Okay. So when you get the pain you use medical marijuana and then it goes away?

A. Yes.

Q. All right. How often are you using medical marijuana?

A. About four times a day.

AR 43-44. In June 2020, Plaintiff reported to Dr. Zubair that her trigeminal neuralgia was stable. AR 458. Dr. Zubair offered her medications for this condition and she responded that "she is happy with the current management with medical marijuana." *Id.*

Two state agency physicians reviewed Plaintiff's medical records. Neither physician determined Plaintiff's conditions and resulting symptoms required unscheduled breaks, time off task, or excessive absences. AR 64-67, 91-92. Further, the ALJ's RFC is more limiting than the reviewing physician opinions because, as he explained, "[T]he opinion that the claimant would not have any environmental limitations [is] not persuasive. The claimant should clearly have some hazard limitations in place and these generally fall under environmental limitations. As such, the lack of finding any limitations about the claimant avoiding workplace hazards [is] inconsistent with the rest of the record." AR 20.

In reviewing Plaintiff's subjective reports, it is clear that the ALJ's RFC is closely linked to the same. Plaintiff reported that the pain from her trigeminal neuralgia is controlled by medical marijuana and in fact, declined trying additional medication for this condition. She also stated that her trigeminal neuralgia is often triggered by cold. Thus, the ALJ included a requirement in the RFC that she cannot be exposed to extreme cold. Plaintiff reported, and the ALJ specifically acknowledged, that she experiences approximately one severe migraine per month. The VE testified that being off task 10% of the time and one absence per month is tolerated within normal workplace practice. AR 53. Additionally, Plaintiff reported to her neurologist and testified at the administrative hearing that stress can trigger a migraine and/or dizziness that may accompany the same. AR 37, 453. The ALJ's RFC specifically limited Plaintiff to simple repetitive routine tasks, no production rate requirements, and no exposure to unprotected heights and moving machinery parts. AR 17.

In reviewing Plaintiff's arguments and the record as a whole, Plaintiff does not cite to any medical evidence or opinions the ALJ failed to consider. Moreover, the ALJ's findings with regard to her subjective reports and his RFC are clearly "closely and affirmatively linked to substantial evidence[.]" *Kepler*, 68 F.3d at 391. Thus, Plaintiff merely disagrees with the conclusions drawn by the ALJ. However, Plaintiff's mere disagreement with the ALJ's conclusion provides no basis for this

Court to reweigh the evidence in the manner she implicitly requests. *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). Therefore, this claim of error is denied.

V.  Conclusion

Based on the foregoing analysis, the decision of Defendant is affirmed. Judgment will issue accordingly.

ENTERED this  25th  day of February, 2022.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE